Richard Gerald JORDAN,
Petitioner-Appellant,

v.

John C. WATKINS, Commissioner, Mississippi Department of Corrections, et al., Respondents-Appellees.

No. 81–4172.

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1982.

Rehearing and Rehearing En Banc
Denied Oct. 7, 1982.

See 688 F.2d 395.

Wilmer, Cutler & Pickering, James T. Kilbreth, III, Washington, D. C., Joseph P. Hudson, Gulfport, Miss., Timothy N. Black, Washington, D. C., Judith A. Reed, New York City, Levi & Denham, Earl L. Denham, Ocean Springs, Miss., for petitioner-appellant.

William S. Boyd, III, Sp. Asst. Atty. Gen., Jackson, Miss., for respondents-appellees.

Before BROWN and RANDALL, Circuit Judges, and DUPLANTIER,* District Judge.

**DUPLANTIER, District Judge:**

On January 12, 1976, Richard Gerald Jordan kidnapped the wife of an officer of a Gulfport, Mississippi, bank, took her to a nearby wooded area, and killed her by shooting her in the head. Jordan was arrested at a roadblock the next day after he had been observed picking up the $25,000 ransom he had demanded.[1]

A Mississippi state court jury convicted Jordan of capital murder on July 21, 1976, and the court imposed a mandatory death sentence under the then applicable Mississippi law. The trial court granted his motion for a new trial in light of the state supreme court's decision in *Jackson v. State*, 337 So.2d 1242 (Miss.1976), which set forth new capital-sentencing guidelines and procedures. Appellant's second trial was bifurcated, as required by *Jackson, supra.* The jury convicted appellant in the guilt phase of the trial and thereafter imposed a sentence of death in the sentencing phase. The state supreme court affirmed his conviction and sentence, *Jordan v. State*, 365 So.2d 1198 (Miss.1978), and the United States Supreme Court denied his petition for a writ of certiorari. *Jordan v. Mississippi*, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979). The state supreme court denied appellant's petition for a writ of error coram nobis.

This appeal from the federal district court's denial of habeas corpus relief (28 U.S.C. § 2254) presents the following issues:

(1) whether the exclusion of petit jury veniremen who expressed conscientious objections to the death penalty violated the rule of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968);

(2) whether the introduction at trial of appellant's tape-recorded confession, which was elicited in the absence of counsel, violated the fifth and sixth amendments;

(3) whether the trial court's jury charge permitted appellant to be sentenced to death without a finding that he intended to kill, and, if so, whether this would impose a punishment excessive in relation to the crime, in violation of the eighth amendment. *See Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977).

(4) whether the application to appellant of the Mississippi capital-sentencing statute as construed by the Supreme Court of Mississippi in *Jackson v. State, supra*, violated the ex post facto clause of the Unit-

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

1. The facts are set forth in considerable detail in *Jordan v. State*, 365 So.2d 1198 (Miss.1978), cert. denied, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979).

ed States Constitution because the *Jackson* procedures were not enacted until after Jordan's first trial;

(5) whether the Mississippi supreme court in *Jackson* engaged in a legislative function in violation of Jordan's due process rights; and

(6) whether the aggravating/mitigating circumstances rules promulgated by the Mississippi supreme court in *Jackson v. State, supra,* as applied by the trial court during the sentencing hearing, failed to channel the sentencing jury's discretion by clear and objective standards as required by the eighth amendment as construed in *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

With respect to the first two issues, Jordan challenges both the guilty verdict and the death sentence. The other issues involve only the validity of the capital sentence. We conclude that Jordan's arguments regarding all but the *Godfrey* issue are unfounded. We hold that the procedure followed in the sentencing hearing violated constitutional requirements as set forth in *Godfrey v. Georgia, supra.* Therefore, we vacate the capital sentence and authorize the State of Mississippi to attempt to reimpose the death penalty at a proper sentencing hearing before a new jury pursuant to present Mississippi law.

*The Witherspoon Issue*

■ Appellant contends that he was denied his right to a fair and impartial jury under the sixth and fourteenth amendments as construed and applied in *Witherspoon v. Illinois, supra,* by the exclusion of four veniremen who expressed conscientious objections to the death penalty. Through *Witherspoon* and its progeny, the Court has established that a juror may not be challenged *for cause* based upon his general objections to capital punishment or scruples against its infliction. *See, e.g., Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). The transcript of appellant's trial shows that the potential jurors who expressed objections to the death penalty were struck from the venire by the prosecutor's use of peremptory challenges, not challenges for cause.[2] The *Witherspoon* rule is inapposite to the case *sub judice* because it applies solely to the use of challenges for cause.[3] "There is thus no *Witherspoon* issue in this appeal." *Stephens v. Zant,* 631 F.2d 397, 404 (5th Cir. 1980), *modified in other respects,* 648 F.2d 446 (5th Cir. 1981).[4]

*The Confession and the Right to Counsel*

■ Jordan claims that the trial court erred in admitting the tape-recorded confession that was elicited from him in the absence of his appointed counsel during custodial interrogation after he had been charged. Appellant argues that his confession was obtained in violation of the fifth and sixth amendments.

The underlying facts are undisputed.[5] Jordan was arrested between 12:30 and 1:00 P.M. He was taken to the FBI offices in

---

2. The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. *Swain v. Alabama,* 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759, 772 (1965).

3. In dictum, the Court recently characterized peremptory challenges, as well as personal bias, ill health and financial hardship, as "grounds for exclusion having nothing to do with capital punishment." *Adams v. Texas, supra,* 448 U.S. at 48, 100 S.Ct. at 2528, 65 L.Ed.2d at 592.

4. After granting certiorari in *Stephens, supra,* on an issue unrelated to any in the instant case, the Supreme Court certified a question of state law to the Supreme Court of Georgia, —— U.S. ——, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982).

5. At the state court hearing on his motion to suppress, appellant testified that he had made several requests for an attorney and that he had been threatened by the FBI during interrogation sessions. FBI agents and local police officials testified to the contrary. The state court trial judge found that no such requests or threats had been made, and appellant has not reasserted these allegations in this appeal.

Gulfport immediately thereafter by three members of the local police force, one of whom informed appellant that it was his duty to advise him of his rights under *Miranda v. Arizona*.[6] After appellant replied that he already knew his rights, the officer read them to him from a *"Miranda* card." Jordan recited the *Miranda* rights by memory as the officer read them. At approximately 2:00 P.M., appellant again was advised orally of his rights by an FBI agent in an interview room in the presence of another FBI agent and a police detective. Jordan then read a waiver of rights form, stated that he understood his rights, and executed a written waiver. All of this took place without any request by Jordan for the assistance of counsel.

Jordan initially denied any involvement in the kidnapping or murder but changed his mind and told the authorities about most of his activities in connection with the crime. In addition, he drew a map showing the location of his victim's body and offered to help locate certain key items of inculpatory evidence. Jordan was transferred to the custody of local officials after a visit to the various scenes of the crime.

At 4:45 P.M., Jordan was brought before a county judge, who advised him that he was charged with a capital offense and that he was entitled to an immediate preliminary hearing. The judge, appellant and the prosecutor (Necaise) then engaged in the following colloquy:[7]

BY THE COURT: How old are you?
BY THE DEFENDANT: Twenty-nine, sir.

\*  \*  \*  \*  \*  \*

BY THE COURT: I see. Have you an attorney?
BY THE DEFENDANT: No, sir, I do not.
BY THE COURT: Do you desire an attorney before you are arraigned?
BY THE DEFENDANT: Yes, Your Honor.
BY THE COURT: Have you means to employ an attorney by yourself?

BY THE DEFENDANT: No, your Honor, I do not.

\*  \*  \*  \*  \*  \*

BY THE COURT: Do you desire this Court to appoint an attorney for you?
BY THE DEFENDANT: Yes, your Honor, at this time.
BY THE COURT: I see. What do you mean, "at this time?"
BY THE DEFENDANT: Maybe in the future I will be able to obtain, through relatives or something, one.
BY THE COURT: I see. You recognize the fact that you are here today so that you may have an immediate hearing. Is that correct?
BY THE DEFENDANT: Yes, Your Honor.
BY THE COURT: But you desire now that the Court will make an appointment of an attorney for you before you have either the arraignment or a hearing in this case? Is that correct?
BY THE DEFENDANT: Yes, Your Honor.

\*  \*  \*  \*  \*  \*

BY THE COURT: Now, Mr. Jordan, you have told the Court that you would rather not enter a plea to that charge, be arraigned on this particular charge, until you've had an attorney appointed.
BY THE DEFENDANT: Well, Your Honor, I'll plead at this time. I already know what my plea is going to be.

\*  \*  \*  \*  \*  \*

BY THE COURT: Now, that's left with you, if you voluntarily desire to enter a plea, or the Court will appoint an attorney, and you can wait until you've conferred with the attorney before you enter your plea if you desire.
BY THE DEFENDANT: Yes, I'll wait until I confer with him.
BY THE COURT: All right, sir.

\*  \*  \*  \*  \*  \*

---

6. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1968).

7. Trial transcript, Vol. XIV at 2508–15.

MR. NECAISE: Let me say, if Your Honor please, that the State of Mississippi is ready and can go forward today, at this time, with a preliminary hearing.

\* \* \* \* \* \*

BY THE COURT: I assume that that is a fact, and that's the reason why I want this defendant to know that he is entitled to that hearing if he desires it at this time, or you do have the right to pass that until you have an attorney, and that's what you desire to do? Is that correct?

BY THE DEFENDANT: I prefer to have the attorney here that—

BY THE COURT: All right.

\* \* \* \* \* \*

Does the defendant have anything further he would like to take up with the Court?

BY THE DEFENDANT: Not at this time, Your Honor.

BY THE COURT: All right. Your attorney will then confer with Mr. Necaise after this to ascertain when a hearing can be had if you desire one. Do you understand that? Is that correct?

BY THE DEFENDANT: (The defendant nods "Yes")

BY THE COURT: All right. That will be fine. Under the circumstances this case is closed.

Following his court appearance, Jordan was placed in the county jail; almost immediately he was taken to be fingerprinted and photographed. At that time a local police investigator asked Jordan if he would like to talk to him. After appellant responded that he would, he was taken to an interview room where he was again advised of his rights. Two other local police officials were present during the entire time that Jordan was in the interview room. It is undisputed that none of them knew that counsel had just been appointed to represent appellant.

The police told Jordan that they were going to read him his rights "one more time because we are going to put it on tape," and "if there's any question about them you can ask us." Appellant was then told that he had the right to remain silent; that anything he said could be used against him in a court of law; that he had the right to talk to a lawyer and have him present during questioning; that, if he so desired, a lawyer would be appointed to represent him if he could not afford to hire one; that he could decide to exercise these rights at any time and not answer any questions or make any statements. Jordan then stated that he understood his rights and repeated his previous confession with the knowledge that he was being tape recorded. At no time during this recorded interview session did he request the presence of a lawyer or the opportunity to consult one. Jordan did not state that an attorney had just been appointed to represent him and he never attempted to cut off questioning.

Appellant moved to suppress this confession in pretrial proceedings and again at trial. These motions were denied by the state trial judge, after a full and fair hearing, on the grounds that the inculpatory statement was made voluntarily after appellant had been advised of his rights, had understood them, and made a voluntary, knowing and intentional waiver of them.

In *Miranda, supra*, the Court announced the following rule:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.

384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–707. The Court recently reaffirmed *Miranda* in *Edwards v. Arizona,* 451 U.S. 477, 484–485, 101 S.Ct. 1880–1884–85, 68 L.Ed.2d 378, 386 (1981), where it stated:

Although we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina v. Butler, supra,* 441 U.S., [369] at 372–376, 99 S.Ct., [1755] at 1757–1759, [60 L.Ed.2d 286] the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that *when an accused has invoked his right to have counsel present during custodial interrogation,* a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, ... *having expressed his desire to deal with the police only through counsel,* is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. (Emphasis added.) (Footnote omitted.)

Appellant contends that *Miranda* as applied in *Edwards* requires the suppression of his recorded confession. We conclude that the question before the Court in *Edwards* is clearly distinguishable from that presented in the case *sub judice.* In *Edwards,* the Court addressed the issue of "whether the Fifth, Sixth [8] and Fourteenth Amendments require the suppression of a post-arrest confession, which was obtained *after Edwards had invoked his right to consult counsel before further interrogation.*" 451 U.S. at 478, 101 S.Ct. at 1881, 68 L.Ed.2d at 382 (emphasis added). In the instant case, Jordan never requested the assistance of counsel with respect to custodial interrogation; he merely told the judge that he would like appointed counsel to assist him in further judicial proceedings. In *Edwards,* the expressed desire to deal with the police only through counsel was made to the police during a custodial interrogation session. Unlike *Edwards,* Jordan

never "invoked his right to have counsel present during custodial interrogation" or "expressed his desire to deal with the police only through counsel." Moreover, he expressed no reluctance to speak with his interviewers, and he never attempted to cut off questioning.

Jordan's contention with regard to this issue is virtually identical to that rejected by this court in *Blasingame v. Estelle,* 604 F.2d 893 (5th Cir. 1979). Blasingame was arrested, charged and arraigned, at which time he was advised of his fifth and sixth amendment rights. At arraignment, he requested that a lawyer be appointed to represent him. That evening a police officer took the defendant to an office in the building where he was jailed to interrogate him. After the police officer advised Blasingame of his *Miranda* rights, the defendant stated that he understood them and gave an inculpatory statement. On appeal from the denial of federal habeas corpus relief, Blasingame argued that any interrogation after he had requested the appointment of counsel was impermissible and that his confession should have been suppressed without inquiry as to waiver.

This court stated that the crucial issue was "whether defendant asserted his right to counsel in such a manner that later police inquiry 'has impinged on the exercise of the suspect's continuing option to cut off the interview.'" *Blasingame, supra,* 604 F.2d at 895. This court resolved that inquiry against Blasingame for the following reasons:

[S]ome defendants may well wish to have an attorney to represent them in legal proceedings, yet wish to assist the investigation by talking to an investigating officer without an attorney present. "While the suspect has an absolute right to terminate station-house interrogation, he also has the prerogative to then and there answer questions, if that be his choice." To hold that a request for ap-

---

**8.** The Court did not reach the sixth amendment claim. 451 U.S. at 480 n.7, 101 S.Ct. at 1882 n.7, 68 L.Ed.2d at 383 n.7.

pointment of an attorney at arraignment would bar an investigating officer from later finding out if defendant wishes to exercise this prerogative would transform the *Miranda* safeguards, among which is the right to obtain appointed counsel, "into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests."

\*   \*   \*   \*   \*   \*

In this case the circumstances surrounding Blasingame's counsel request show it to have been unrelated to the Fifth Amendment-based right to confer with or have counsel present before answering *any* questions.

\*   \*   \*   \*   \*   \*

Under the circumstances of this case, we cannot say that Officer Senkel should have been barred from interrogation simply because Blasingame requested counsel at the time of arraignment, after Senkel informed Blasingame of his rights and inquired whether he desired to waive them. (Citations omitted.)

604 F.2d at 895–96.

For these same reasons, we conclude that Jordan's request for an attorney when he was brought before the court for arraignment was "unrelated to the Fifth Amendment-based right to confer with or have counsel present before answering any questions." *Id.*

■ Notwithstanding that Jordan did not invoke his right to counsel with respect to custodial interrogation, as did *Edwards*, the confession at issue would not have been admissable unless the state proved that Jordan waived his right to counsel, and that the waiver was voluntary, knowing and intelligent. An express written or oral statement of waiver of the fifth amendment right to remain silent or of the right of counsel is neither necessary nor always sufficient to establish that an accused's waiver was voluntary, knowing and intelligent. *See North Carolina v. Butler*, 441 U.S. 369, 370, 99 S.Ct. 1755, 1756, 60 L.Ed.2d 286

(1979), where the Court set forth these guidelines for determining the validity of a waiver of *Miranda* rights:

[M]ere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

441 U.S. at 374, 99 S.Ct. at 1757, 60 L.Ed.2d at 282 (footnote omitted). Obviously, the validity of a waiver in any case must be determined by analyzing "the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed.2d 1461, 1466 (1938).

The totality of the particular facts and circumstances in this case clearly demonstrate that Jordan made a voluntary, knowing and intelligent waiver of his fifth amendment rights. Jordan was twenty-nine years old, intelligent, educated, experienced, alert and articulate. He had the equivalent of two years of college and had spent seven years in "the service" in personnel management and air traffic control. Prior to making the recorded confession, appellant had been advised of his *Miranda* rights at least four times; the first time he was able to recite them from memory. When he was asked if he understood his rights during the recorded interview session he responded, "Yes, I do." Finally, he was not threatened or offered any promises of leniency. Based on all the facts and circumstances in this case we conclude that a waiver must be inferred from the appellant's actions and words. *See North Carolina v. Butler, supra.* In short, appellant "was offered counsel but [voluntarily] intelligently and understandingly rejected the offer." *Miranda, supra*, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724.

■ Appellant also argues that his right to counsel under the sixth and fourteenth amendments was violated by his interrogation in the absence of counsel after adversary proceedings had commenced. It is undisputed that adversary proceedings had commenced when the authorities elicited the recorded confession. "[O]nce adversary proceedings have commenced against an individual, he has the right to legal representation when the government interrogates him." *Brewer v. Williams,* 430 U.S. 387, 401, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424, 438 (1977). This does not mean that at that stage an accused cannot waive his rights under the sixth and fourteenth amendments. *Id.,* 430 U.S. at 405–406, 97 S.Ct. at 1243, 51 L.Ed.2d at 441. Rather, it is "incumbent upon the [prosecution] to prove an intentional relinquishment of a known right or privilege.'" *Id.,* 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439. Based on the facts and circumstances previously discussed, we hold that the prosecution met this strict standard with respect to Jordan.

### The Capital Murder Jury Charge

■ Jordan contends that the charge given to the jury at his sentencing hearing permitted the jury to impose the death penalty for an unintentional killing committed in the course of a felony, kidnapping. Appellant argues that under these circumstances his death sentence violates the eighth amendment's prohibition against punishment which is " 'excessive' in relation to the crime committed," in that it "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia, supra,* 433 U.S. at 592, 97 S.Ct. at 2866, 53 L.Ed.2d at 989 (1977).

Jordan was charged with capital murder under Miss.Code Ann. § 97–3–19(2)(e) (Supp.1981), which provides in pertinent part:

> The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
>
> *   *   *   *   *   *
>
> (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson or robbery, or in any attempt to commit such felonies[.]

Although the statute makes a non-intentional killing committed in the course of a kidnapping a capital offense, the indictment charged that Jordan "did unlawfully, *with malice aforethought,* kill and murder one Edwina Marter, a human being, while engaged in the commission of the crime of kidnapping of the said Edwina Marter, in violation of [section 97–3–19(2)(e)]." (Emphasis added.) Throughout the trial, the state's theory was that Jordan executed his victim. The state never suggested that the jury could convict Jordan of capital murder if the killing was unintentional, albeit in the course of a kidnapping. Nevertheless, appellant argues that because the judge at one point in his charge included the phrase "with or without any design to effect death" from the statute defining capital murder, the capital verdict should be invalidated. Specifically, he argues that based on this one reference to "with or without design to effect death", the jury's verdict is as likely to reflect a finding that appellant shot his victim "without any design to effect death" as it is likely to reflect a finding that he acted by "design" or "with malice aforethought." We disagree.

The state trial judge's first instruction told the jury that all of his instructions must be read and considered together.[9]

**9.** The entire portion of the charge involved in this issue is as follows:

> The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that the Defendant, Richard Gerald Jordan, in the First Judicial District of Harrison County, Mississippi, on or about the time and date charged, and testified about, did unlawfully, *willfully and* feloniously, *with malice aforethought,* kill and murder one Edwina Marter, a human being, while engaged in the commission of the

Several times he told the jury that Jordan was charged with killing willfully and with malice aforethought, concluding with the following:

> The Court instructs the jury that if you do not believe beyond a reasonable doubt that Richard Gerald Jordan did, *with malice aforethought, unlawfully, willfully and feloniously* kill and murder one Edwina Marter while engaged in the commission of the crime of kidnapping the said Edwina Marter, then it is your sworn duty to find the Defendant not guilty of capital murder. (Emphasis added.)

The portion of the court's charge complained of by appellant cannot be read in isolation. The standard of review that must be applied is whether the court's charge as a whole was correct. *See e.g., United States v. Arguelles*, 594 F.2d 109, 112 n.3 (5th Cir.), *cert. denied*, 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979). A trial judge is vested with "broad discretion in formulating his charge and we will not lightly disturb his judgment." *United States v. Ruppel*, 666 F.2d 261, 273–274 (5th Cir. 1982).

Considering the language of the indictment and the state's factual theory, it may have been better for the trial judge to have omitted the general definition of capital murder from his charge in this case, even though his instruction was an accurate statement of Mississippi law. *See* Section 97–3–19(2)(e), *supra*. This would have avoided any possible *Coker*-type attack such as appellant makes. However, any prejudice that the general definition could have caused was eviscerated by the specific instruction that immediately followed. This instruction tracked the language of appellant's indictment and told the jury in unequivocal language that it had to find beyond a reasonable doubt that Jordan acted "with malice aforethought, unlawfully, willfully and feloniously" before it could convict him of capital murder. This was supplemented by a later instruction that reminded the jury of its "sworn duty to find the defendant not guilty of capital murder" if it did not believe beyond a reasonable doubt that appellant acted "with malice aforethought, unlawfully, willfully and feloniously." Another subsequent instruction defined malice aforethought.

■ We find that the court's charge told the jury that it could not convict appellant absent a finding that he intended to commit murder, that the court's charge, "read as a whole, fairly instructed the jury," *United States v. Colmenares-Hernandez*, 659 F.2d 39, 42 (5th Cir. 1981), and that the jury's

---

crime of kidnapping of the said Edwina Marter, in violation of Section 97–3–19, sub-section (2)(e), of the Mississippi Code of 1972, as amended; then, if you so believe from the evidence in this case beyond a reasonable doubt, the Defendant is guilty of Capital Murder, it is your sworn duty to say so by your verdict.

The Court instructs the Jury that the "malice aforethought" mentioned in the indictment does not have to exist in the mind of the Defendant for any given length of time, so long as it exists at the time of the alleged act.

The Court instructs the Jury that the killing of a human being without the authority of law by any means or in any manner shall be Capital Murder when done with or without any design to effect death by any person while engaged in the commission of the crime of kidnapping. The Court therefore instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt, that the Defendant, Richard Gerald Jordan, in the First Judicial District of Harrison County, Mississippi, on or about the time and date charged and testified about did then and there, *with malice aforethought, unlawfully, willfully and feloniously* kill and murder one Edwina Marter, a human being, while engaged in the commission of the crime of kidnapping the said Edwina Marter, then the Jury should find the defendant guilty of Capital Murder.

\* \* \* \* \* \*

The Court instructs the jury that *malice aforethought is a premeditation to commit an act without legal justification or excuse.*

The Court instructs the jury that if you do not believe beyond a reasonable doubt that Richard Gerald Jordan did, *with malice aforethought, unlawfully, willfully and feloniously* kill and murder one Edwina Marter while engaged in the commission of the crime of kidnapping the said Edwina Marter, then it is your sworn duty to find the Defendant not guilty of capital murder.
Trial Transcript, Vol. XIV and XV at 2688–2694 (emphasis added).

verdict can be read only to reflect a finding that appellant intended to commit murder. It is well established that capital punishment is not a disproportionate sanction "when a life has been taken deliberately by the offender .... It is an extreme sanction, suitable to the most extreme of crimes." *Gregg v. Georgia*, 428 U.S. 153, 187, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 882–83 (1976).

Having concluded that the instructions to the jury required a finding of intent to commit murder, we do not consider the issue whether a death sentence in the absence of specific intent would be unconstitutional under the heinous circumstances of this crime.

*Post-Furman Mississippi Capital Punishment Law*

Mississippi, like several other states, interpreted *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), to mean "that the penalty of death, if applied at all, must be made mandatory upon the conviction of certain offenses." *Jackson v. State, supra*, 337 So.2d at 1250. In response to *Furman, supra*, the Mississippi Legislature enacted Chapter 576, 1974 Miss.Laws, which amended Miss.Code Ann. § 97–3–19 (1972). The amendment defined the new crime of capital murder for which Jordan was convicted. The statute also amended, *inter alia*, Miss.Code Ann. § 97–3–21 (1972), which provided the penalties for murder, as follows:

Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the state penitentiary.

Every person who shall be convicted of capital murder shall be sentenced by the court to death.

In *Stevenson v. State*, 325 So.2d 113 (Miss. 1975), the Mississippi supreme court construed these amendments as providing for mandatory capital punishment and held them to be constitutional. Appellant was convicted and sentenced pursuant to these statutes in his first trial, which ended July 21, 1976.

On July 2, 1976, the United States Supreme Court decided *Gregg v. Georgia, supra; Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). The general rule that emerged from these cases is that the death penalty is not *per se* cruel and unusual punishment, but mandatory capital punishment laws violate the eighth amendment.

In the wake of these rulings, the Mississippi supreme court decided *Jackson, supra*, which re-evaluated the state's capital punishment laws. In *Jackson*, the court noted that Mississippi has always had some form of capital punishment statute. 337 So.2d at 1250. As a threshold matter, the court determined that when the legislature amended section 97–3–21 in response to *Furman, supra*, its dominant intention had been to enact a death penalty law that would pass constitutional muster. *Id.* at 1251. Then, the court discussed applicable principles of Mississippi law and stated:

The rule is without exception that when the Court is confronted with a statute a literal construction of which would render it unconstitutional, the Court must adopt such a construction, when reasonably possible, as will save the statute, and at the same time save every savable provision or term in it.

*Id.* Similarly, the court noted that seemingly mandatory statutory terms may be read as permissive when such a construction is made necessary by the "evident intention of the legislature." *Id.* Based on these principles, the court held:

We therefore construe the second sentence of Section 97–3–21 to mean that every person convicted of capital murder shall be sentenced to death if that be the verdict of the jury after the defendant has been accorded a trial governed by procedures and guidelines designed to prevent the risk that the death penalty would be inflicted in an arbitrary and

capricious or freakish manner. Such a construction is reasonable and proper and is necessary to carry out the dominant intent and purpose of the legislature. *Id.* So that the death penalty would not be mandatory, the court struck down that portion of Chapter 576, later codified in section 99–17–20, which prohibited the granting of jury instructions as to lesser included offenses. *Id.* at 1254–55.

The court also exercised its "inherent power" to promulgate rules to prescribe what it considered to be the necessary procedures and guidelines for imposing the death sentence. First, the court decreed that all trials for capital offenses must be bifurcated, with guilt to be determined in the first phase and the sentence in the second. *Id.* at 1253. If practical, the sentencing hearing should be conducted before the same jury immediately following the guilt phase. *Id.* at 1256. The court set forth the following rules and guidelines to be applied at the sentencing hearing:

> At the sentencing hearing, the question to be decided by the jury is whether the defendant shall be sentenced to death or to life imprisonment. At this hearing, the State may elect to stand on the case made at the first hearing, if before the same jury, or may reintroduce any part of the evidence adduced at the first hearing which it considers to be relevant to the particular question of whether the defendant shall suffer death or be sentenced to life imprisonment. In addition thereto, an accused's prior record of criminal convictions, if any, may be proven as an additional aggravating circumstance whether the defendant testifies in his own behalf or not. At this hearing, the defendant may prove his lack of a prior criminal record as a mitigating circumstance and may also adduce proof of any other circumstance or combination of circumstances surrounding his life and char-

> acter or the commission of the offense with which he is charged that would be reasonably relevant to the question of whether he should suffer death or be sentenced to life in prison.

> Proof beyond a reasonable doubt of the statutory elements of the capital offense with which the accused is charged shall constitute sufficient circumstance to authorize imposition of the penalty of death unless the mitigating circumstances shown by the evidence outweigh the aggravating circumstances.

> The jury shall not be required to make a special finding of any mitigating circumstance in order to return a verdict that the accused should be sentenced to life in prison. However, before the jury may return a verdict that the defendant should suffer the penalty of death, they must unanimously find in writing that after weighing the mitigating circumstances and the aggravating circumstances one against the other that the mitigating circumstances do not outweigh the aggravating circumstances and that the defendant should suffer the penalty of death.

> If the jury is unable to agree unanimously on a verdict at the sentencing hearing, the defendant shall be sentenced to life in prison.

*Id.* Finally, the court stated that it would review all death sentences as preference cases to determine whether capital punishment was warranted in the particular case and to facilitate the goal of imposing the death penalty in a consistent and evenhanded manner. *Id.*

In 1977, after Jordan's second trial resulting in the death sentence now under review, the Mississippi Legislature enacted detailed provisions to make clear that the death penalty is not mandatory and to replace the *Jackson* procedures and guidelines.[10] While the *Jackson* decision did not

---

**10.** § 97–3–21. Homicide—penalty for murder or capital murder.

Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the state penitentiary.

Every person who shall be convicted of capital murder shall be sentenced to death or to imprisonment for life in the state penitentiary.

§ 99–19–101. Jury to determine punishment in capital cases in separate sentencing pro-

limit the number or nature of aggravating circumstances to be considered by the jury in the sentencing hearing, the new Mississippi legislation does. In *Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982), this court recently rejected numerous constitutional challenges to this new Mississippi statute.

### The Ex Post Facto Issue

■ Jordan's motion for a new trial was granted in response to *Jackson*. Jordan contends that the application of the *Jackson* procedures and guidelines to a crime committed prior to the *Jackson* decision violated the ex post facto clause of the United States Constitution.

■ Article I, § 10 of the Constitution prohibits a state from enacting any "ex post facto law." The ex post facto clause is a limitation upon the powers of state legislatures and does not by its own terms apply to judicial decisions. *See, e.g., Frank v. Magnum*, 237 U.S. 309, 344, 35 S.Ct. 582, 593, 59 L.Ed. 969 (1915). However, in *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), the Court held that a state supreme court is barred by the due process clause from achieving by judicial construction a result which a state legislature could not obtain by statute.

The ex post facto argument raised by Jordan is indistinguishable from that rejected by the Supreme Court in *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In *Dobbert*, the Court held that changes in Florida's capital sentencing statute similar to those resulting from the Mississippi *Jackson* decision were procedural and ameliorative and thus not ex post facto as applied to a crime committed before the adoption of the statute. Therefore, we reject Jordan's ex post facto claim.

For the same reasons, we reach the same conclusion with respect to the 1977 Mississippi legislation now in effect. Its application to Jordan would not violate the ex post facto clause.[11]

### The Due Process Issue

■ Jordan also argues that a death sentence imposed under the *Jackson* procedure violates his due process rights, because the procedure was promulgated by the judiciary rather than the legislature.

■ It is the well established province of state courts "to interpret and, where

---

ceeding; aggravating and mitigating circumstances to be considered.

(1) Upon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable. If, through impossibility or inability, the trial jury is unable to reconvene for a hearing on the issue of penalty, having determined the guilt of the accused, the trial judge may summon a jury to determine the issue of the imposition of the penalty. If the trial jury has been waived, or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled for that purpose. In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitutions of the United States or of the State of Mississippi. The state and the defendant and/or his counsel shall be permitted to

present arguments for or against the sentence of death.

(2) After hearing all the evidence, the jury shall deliberate on the following matters:

(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5) of this section;

(b) Whether sufficient mitigating circumstances exist as enumerated in subsection (6) of this section, which outweigh the aggravating circumstances found to exist; and

(c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.

(3) For the jury to impose a sentence of death, it must unanimously find in writing the following:

(a) That sufficient aggravating circumstances exist as enumerated in subsection (5) of this section; and

(b) That there are insufficient mitigating circumstances, as enumerated in subsection (6), to outweigh the aggravating circumstances.

11. Our decree authorizes Mississippi to urge another jury to impose a death sentence upon Jordan, after a hearing conducted pursuant to this legislation.

they see fit, to reinterpret" their own constitutions and statutes. *See Garner v. Louisiana,* 368 U.S. 157, 169, 82 S.Ct. 248, 254, 7 L.Ed.2d 207, 216 (1961). An authoritative interpretation of a state statute by the state's highest court "puts these words in the statute as definitely as if it had been amended by the legislature." *Winters v. New York,* 333 U.S. 507, 514, 68 S.Ct. 665, 669, 92 L.Ed. 840 (1948). Moreover, under Mississippi law, the Mississippi Supreme Court has "inherent power to prescribe rules of procedure to facilitate the administration of justice in [Mississippi] courts." *Newell v. State,* 308 So.2d 71 (Miss.1975) at 78.

■ "On rare occasions, [federal courts may] re-examine a state-court interpretation of state law when it appears to be an 'obvious subterfuge to evade consideration of a federal question.'" *Mullaney v. Wilbur,* 421 U.S. 684, 691 n.11, 95 S.Ct. 1881, 1886 n.11, 44 L.Ed.2d 508, 515 n.11 (1975). Otherwise, "[s]tate courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a [s]tate's criminal statutes by the courts of that [s]tate ...." *Mendiola v. Estelle,* 635 F.2d 487, 489 (5th Cir. 1981).

We conclude that Mississippi's supreme court did not attempt to evade consideration of a federal issue when it decided *Jackson v. State, supra.* Thus, that court's construction of section 97–3–21 as permissive rather than mandatory and its promulgation of procedural rules are actions beyond this court's scope of review. It is for the Mississippi supreme court to determine

whether it had authority under the Mississippi constitution to render the decision which it did in *Jackson.*

*The Jury's Sentencing Discretion*

■ In *Furman, supra,* the Court held that capital punishment cannot be imposed under sentencing procedures which create a substantial risk that the unique and ultimate sanction of death will be inflicted in an arbitrary and capricious manner. This holding was reaffirmed in *Gregg, supra,* as follows:

> "[W]here discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."

428 U.S. at 189, 96 S.Ct. at 2932, 49 L.Ed.2d at 883.

More recently, the Court summarized the holdings of *Furman* and its progeny by stating that capital punishment laws must "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey, supra,* 446 U.S. at 428, 100 S.Ct. at 1764–65, 64 L.Ed.2d at 406 (footnotes omitted).

Under the Georgia statute involved in *Godfrey,* a defendant could be sentenced to death in a bifurcated trial upon conviction for, *inter alia,* murder (including felony-murder committed irrespective of malice) if the sentencer specified that at least one of ten statutory aggravating circumstances set forth in Georgia Code Ann. § 27–2534.-1(b)(1)–(10) (Supp.1975) [12] existed beyond a

---

**12.** Section 27–2534.1(b) provides in pertinent part:

> (1) The offense of murder, rape, armed robbery, or kidnapping was committed by a person with a prior record of conviction for a capital felony, or the offense of murder was committed by a person who has a substantial history of serious assaultive criminal convictions.
>
> (2) The offense of murder, rape, armed robbery, or kidnapping was committed while the offender was engaged in the commission of another capital felony, or aggravated bat-

tery, or the offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree.

> (3) The offender by his act of murder, armed robbery, or kidnapping knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person.
>
> (4) The offender committed the offense of murder for himself or another, for the pur-

reasonable doubt. Godfrey was convicted on two counts of murder, and the jury specified that it had found beyond a reasonable doubt the aggravating circumstance set forth in Subsection (b)(7) of the statute: "that the offense of murder was outrageously or wantonly vile, horrible and inhuman." In reference to the jury's findings, the Court stated:

In the case before us the Georgia Supreme Court has affirmed a sentence of death based upon no more than a finding that the offense was "outrageously or wantonly vile, horrible and inhuman." There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as "outrageously or wantonly vile, horrible and inhuman." Such a view may, in fact,

pose of receiving money or any other thing of monetary value.

(5) The murder of a judicial officer, former judicial officer, district attorney or solicitor or former district attorney or solicitor during or because of the exercise of his official duty.

(6) The offender caused or directed another to commit murder or committed murder as an agent or employee of another person.

(7) The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

(8) The offense of murder was committed against any peace officer, corrections employee or fireman while engaged in the performance of his official duties.

(9) The offense of murder was committed by a person in, or who has escaped from, the lawful custody of a peace officer or place of lawful confinement.

(10) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or custody in a place of lawful confinement, of himself or another.

In each case in which the jury imposes the death sentence, the determination of the jury shall be supported by specific written findings of fact based upon the circumstances in subsections (5) and (6) of this section and upon the records of the trial and the sentencing proceedings. If the jury does not make the findings requiring the death sentence, the court shall impose a sentence of life imprisonment.

(4) The judgment of conviction and sentence of death shall be subject to automatic review by the supreme court of Mississippi within sixty (60) days after certification by the sentencing court of entire record, unless the time is extended for an additional period by the supreme court for good cause shown. Such review by the supreme court shall have priority over all other cases and shall be heard in accordance with rules promulgated by the supreme court.

(5) Aggravating circumstances shall be limited to the following:

(a) The capital offense was committed by a person under sentence of imprisonment.

(b) The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.

(c) The defendant knowingly created a great risk of death to many persons.

(d) The capital offense was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, aircraft piracy or the unlawful use or detonation of a bomb or explosive device.

(e) The capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.

(f) The capital offense was committed for pecuniary gain.

(g) The capital offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.

(h) The capital offense was especially heinous, atrocious or cruel.

(6) Mitigating circumstances shall be the following:

(a) The defendant has no significant history of prior criminal activity.

(b) The offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

(c) The victim was a participant in the defendant's conduct or consented to the act.

(d) The defendant was an accomplice in the capital offense committed by another person and his participation was relatively minor.

(e) The defendant acted under extreme duress or under the substantial domination of another person.

(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

(g) The age of the defendant at the time of the crime.

have been one to which the members of the jury in this case subscribed. If so, their preconceptions were not dispelled by the trial judge's sentencing instructions. These gave the jury no guidance concerning the meaning of any of § (b)(7)'s terms. In fact, the jury's interpretation of § (b)(7) can only be the subject of sheer speculation.

*Id.* at 446 U.S. at 428–29, 100 S.Ct. at 1765, 64 L.Ed.2d at 406–407.

Thus, the sentencing guidelines given to the jury by the trial court in *Godfrey* failed to "provide a 'meaningful basis for distinguishing the few cases in which [capital punishment] is imposed from the many cases in which it is not.'" *Id.,* 446 U.S. at 427, 100 S.Ct. at 1764, 64 L.Ed.2d at 406. We agree with Jordan's contention that his death sentence was imposed under guidelines that provided even less guidance to the jury in exercising its sentencing discretion than did those held unconstitutional in *Godfrey.*

Under *Jackson,* "[p]roof beyond a reasonable doubt of the statutory elements of the capital offense with which the accused is charged ... constitute[s] [a] sufficient circumstance to authorize imposition of the [death] penalty." 337 So.2d at 1256. Although the *Jackson* sentencing procedures require the jury to state unanimously in writing that "after weighing the mitigating circumstances and the aggravating circumstances one against the other ... the mitigating circumstances do not outweigh the aggravating circumstances" before imposing the death penalty, the jury is not required to specify the aggravating circumstances that warranted capital punishment. Moreover, the Mississippi supreme court did not limit or define the number or nature of aggravating circumstances that may be considered by the jury in determining whether to sentence a defendant to death. As a result, Jordan's sentencers were given the following pertinent instructions:

The court instructs the Jury that before you may return the death penalty, you must unanimously find in writing that after weighing the mitigating cir-cumstances and the aggravating circumstances one against the other that the mitigating circumstances do not outweigh the aggravating circumstances and that the Defendant should suffer the penalty of death.

\*   \*   \*   \*   \*   \*

The Court instructs the Jury that Proof beyond a reasonable doubt of the statutory elements of the capital offense with which the accused is charged shall constitute sufficient circumstance to authorize impositon [sic] of the penalty of death unless the mitigating circumstances shown by the evidence outweigh the aggravating circumstances.

\*   \*   \*   \*   \*   \*

The Court instructs the jury that if you believe that mitigating circumstances exists [sic] which outweigh the aggravating circumstances surrounding the crime, then it is your sworn duty to find that the Defendant shall be sentenced to life in prison.

It is clear that these instructions failed to "channel the sentencer's discretion by 'clear and objective standards'" and did not "provide 'specific and detailed guidance.'" *Godfrey, supra,* 446 U.S. at 428, 100 S.Ct. at 1764–65, 65 L.Ed.2d at 406. The jury could have considered any number of potentially arbitrary and irrelevant unspecified factors. Indeed, in his closing argument following the court's charge the prosecutor argued to the jury: "Now, the Court has laid out virtually the applicable law in this case, and each of you have to determine what is an aggravating circumstance." Like *Godfrey,* this case is an example of "[t]he standardless and unchanneled imposition of [the death penalty] in the uncontrolled discretion of a basically uninstructed jury." *Id.*

Because the jury's interpretation of the court's charge "can only be the subject of sheer speculation," we have no meaningful basis for distinguishing this case in which the death penalty was imposed from the many cases in which it is not. *Id.* In short, the state trial court's application of the *Jackson* aggravating/mitigating circum-

stances rules thwarted the rational review of the process by which the jury imposed this sentence of death upon Jordan. Therefore, the death sentence must be set aside.

## CONCLUSION

Our decision does not mean that Mississippi cannot ultimately execute Jordan for his heinous crime. In a previous decision setting aside a death sentence imposed by a state court, which had also valiantly but in vain followed what it perceived to be the rulings of the Supreme Court, this court authorized the state to attempt to reimpose a capital sentence. *See Spivey v. Zant*, 661 F.2d 464, 478–79 (5th Cir. 1981). We do likewise.

We affirm Jordan's conviction. We reject all but one of his contentions regarding the validity of his death sentence. We reverse the district court's denial of habeas corpus relief on the ground that the *Jackson* procedures and guidelines as applied by the state court trial judge at the sentencing hearing were constitutionally inadequate. We remand to the district court and direct it to issue a writ providing for the State of Mississippi to determine within a reasonable time whether to conduct another sentencing hearing in the manner now provided by Mississippi law or to vacate petitioner's death sentence and impose a sentence less than death in accordance with state law.

AFFIRMED in part; REVERSED and REMANDED in part.

RANDALL, Circuit Judge, concurring specially.

I concur in the panel's disposition of the issues with respect to the alleged violation of *Witherspoon v. Illinois*, the requested suppression of Jordan's confession, the jury charge on intent and the challenge to his sentence based on unchanneled jury discretion at the sentencing phase, and I therefore concur in the result.

Because the panel has correctly found that the sentencing procedure under which the death penalty was imposed constitutionally infirm, I see no need to address the questions decided by the panel concerning

the constitutionality, under the ex post facto and due process clauses, of the Mississippi Supreme Court's interpretation in *Jackson* and in this case of the now-repealed Mississippi statutes. We have remanded this case to the district court for a determination by the State of Mississippi whether to conduct a new sentencing hearing or to vacate Jordan's death sentence and impose a lesser sentence. Any new sentencing hearing will be held under the new Mississippi statutes. In view of this disposition, there is no need to determine whether the Mississippi Supreme Court's interpretation in *Jackson* and in this case of the now repealed (and wholly inapplicable) Mississippi statutes is constitutionally infirm.