**Elbert Lee MASSENGALE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 953–84.**

Court of Criminal Appeals of Texas, En Banc.

May 28, 1986.

Phil Black, Borger, for appellant.

Stephen F. Cross, Dist. Atty. and Dale D. Jensen and Roy Carper, Asst. Dist. Atty., Robert Huttash, State's Atty., Borger, Julie B. Pollock, Asst. State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of aggravated rape and sentenced by the jury to twenty years' imprisonment. V.T.C.A. Penal Code, Sec. 21.03(a)(5) (repealed). In an unpublished opinion the Amarillo Court of Appeals affirmed the conviction, holding, *inter alia*, that appellant's confession was made voluntarily after a knowing and intelligent waiver of his rights to counsel and to remain silent. *Massengale v. State* (Tex. App.—Amarillo No. 07–82–0410–CR, delivered July 31, 1984). We granted appellant's petition to review this holding of the court of appeals.

Appellant filed a motion to suppress his confession, which was denied after a hearing in the trial court. In the court of appeals appellant contended: (1) the trial court erred in refusing to appoint a psychiatrist to assess whether appellant had the mental capacity to give a voluntary confession; and (2) police officers violated his Fifth Amendment right against self-incrimination when they initiated the interrogation that produced his confession after appellant had invoked his right to counsel. We will address these contentions in order.

Appellant's request for the appointment of a psychiatrist in his first ground for review relates not to competency to stand trial or to waive his rights, but to the voluntariness of his confession. As counsel expressed it to the trial court, "... the intelligence test ... is directly linked to the Motion to Suppress Confession," and "I think it is important for the Court to benefit as I said before on the mental ability of the defendant in making and reaching a decision on the voluntariness of the confession." Appellant now cites *Page v. State*, 614 S.W.2d 819 (Tex.Cr.App.1981) ("... a mental defect may be significant enough to render a confession inadmissible,") and *Jurek v. Estelle*, 623 F.2d 929, 937 (CA5 1980) ("In considering the voluntariness of a confession, this Court must take into account a defendant's mental limitations, to determine whether through susceptibility to surrounding pressures or inability to comprehend the circumstances the confession was not a product of his own free will.") Appellant contends expert testimony was necessary to determine the extent of his mental limitations in order for the trial court to judge whether those limitations rendered the confession involuntary and therefore inadmissible.

Appellant was a janitor at an elementary school. He was arrested after the complainant, a six year old girl, reported a sexual contact between the two of them. Within an hour of his arrest appellant was taken before a magistrate and informed of his rights. Two days later, appellant was questioned by two police officers, who tape-recorded the questioning session and confession. Before the questioning began appellant was again informed of his rights to counsel and to remain silent, and expressly waived those rights.

The trial court held an extensive pretrial hearing on appellant's motion to suppress this confession. There was testimony from the justice of the peace who had warned appellant of his rights, from various police officers, and from appellant. The taped questioning and confession were also played for the court. The trial court denied the motion to suppress and the motion for the appointment of a psychiatrist to examine appellant. The trial court made specific findings of fact, including the following:

> The defendant had the mental capacity to understand the rights he was informed of ... and did in fact understand what his rights were.

> Knowing what his rights were, the defendant knowingly, intelligently, and voluntarily waived his rights ...

The defendant was mentally capable of understanding his rights and waiving his rights and did in fact do so. His statement was not the result of his will being overborne or of any psychological ploys by the interviewing officers.

■ These findings were amply supported by the record. Appellant testified in the pretrial hearing that he had suffered a blackout which lasted about two minutes, some time around the day of the offense, though he didn't remember the specific day the blackout had occurred. He could no longer recall the events leading to the offense with which he was charged. On the tape, however, made at the time of the confession, appellant had clearly recalled the offense in some detail. Thus, while his testimony at the hearing may have been relevant to an attack on his competency to stand trial, it did not render his confession inadmissible.

Appellant testified further that he suspected his I.Q. was "down low," though he didn't know the specific results of any tests he had taken.[1] He sometimes had difficulty understanding people, though he usually told them he did understand. On cross-examination it became clear that appellant understood the nature of the offense. He correctly named the upper range of punishment to which he was subject, said his lawyer was able to make things clear to him, and that he, appellant, had never had any trouble at his job. His formal education had ended in the eleventh grade.

After both sides had questioned appellant the trial court did so at some length. Appellant correctly answered questions as to the names of his previous lawyer, trial judge, justice of the peace and bail bondsman, the court in which he was to be tried and the trial date, the charge against him and his plea to that charge. Finally he declared, "I didn't think I was incompetent."

We believe this hearing was sufficient to allow the trial court to gauge appellant's mental capacity to give a voluntary confession. The trial court was in a position to judge appellant's demeanor and also, having heard the taped confession, whether his will had been overborne by subtle trickery designed to take advantage of his mental limitations. The evidence at the hearing did not raise the need for expert evaluation of appellant's mental capacity. It is true that "if the mental subnormality is so great that an accused is incapable of understanding the meaning and effect of his confession, then it would not be admissible." *Casias v. State*, 452 S.W.2d 483, 488 (Tex.Cr.App.1970). Appellant's subnormality, if any, was clearly not of that great an extent. The trial court had opportunity both to observe appellant when he testified at the hearing and to hear his responses to questioning during the confession. This provided sufficient evidence to rule on appellant's motion to suppress without the benefit of a psychiatric examination. The court of appeals was correct in holding that the trial court did not abuse its discretion in denying appellant's motion to appoint a psychiatrist.

Appellant's second ground for review also concerns his confession. Our decision to review was prompted by the following language in the opinion of the court of appeals:

It is undisputed from this record that appellant had abundant knowledge of his right to counsel and his right to silence. He was advised of those rights on four different occasions, during three of which he acknowledged separately his understanding of each right. After the first two advisements, he invoked his right to counsel and to remain silent; but, following the later two advisements, he made a formal, express waiver of the rights ...

The court of appeals concluded the confession was therefore admissible. This conclusion is incorrect—or at least the analysis is incomplete—based on the court of ap-

---

1. Appellant testified that he had seen a psychiatrist once since his arrest. This unnamed psychiatrist, though, was not called to testify.

peals' interpretation of the facts. If appellant did invoke his right to counsel, it would not have been permissible for police to approach him with further questioning. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) [hereafter *Edwards*]. The State contends, however, that *Edwards* is inapplicable because appellant never did invoke his right to counsel. This is at least in part a factual dispute and requires further elaboration of the facts.

Appellant was arrested on April 20th by two officers, Gillispie and Garrett. Gillispie warned appellant of his rights and did not question him concerning the offense. Within an hour appellant was taken before a justice of the peace who again informed him of his rights. Appellant indicated he understood those rights. Gillispie then informed appellant that he would be taken to the county jail, and that he would need either a lawyer or a bail bondsman in order to be released. Appellant and the officers then left the magistrate's office. In the hallway outside the office appellant's wife and brother-in-law were waiting. When appellant emerged he told his wife, "Get me a lawyer and a bail bondsman." At the hearing on the motion to suppress, appellant, his wife, and brother-in-law testified that the justice of the peace and the two arresting officers were all in a position to hear this instruction to his wife. The justice of the peace and Gillispie both testified, however, that they had not heard the request. The trial court found that they had not. Officer Garrett did not testify at the hearing.

Appellant was returned to jail. On the following day, April 21st, his wife did send a lawyer to see appellant and appellant was allowed to consult with him in private. Appellant testified, however, that he didn't know this stranger was a lawyer sent to represent him. Appellant "flew off the handle" and shouted at the lawyer, who withdrew without advising appellant. The following afternoon, the second day after his arrest, appellant was brought to an interrogation room and questioned by two investigators. This was the questioning session that was tape-recorded and played

for the trial court. Twice before the questioning began appellant was warned individually of each of his rights. Appellant stated he wished to talk to the investigators, and subsequently confessed.

■ The admissibility of this confession depends on the result of "two distinct inquiries." *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488, 493 (1984). Whether appellant validly waived his right to counsel is only the second of these inquiries. "First, courts must determine whether the accused actually invoked his right to counsel." *Id.*

In *Ochoa v. State*, 573 S.W.2d 796, 800 (Tex.Cr.App.1978), we stated that "where a defendant indicates *in any way* that he desires to invoke his right to counsel, interrogation must cease [emphasis in original]." In that case the defendant was being interrogated when he told the policeman questioning him that he would like to talk to an attorney. The policeman made idle conversation with the defendant for a while and then resumed questioning about the offense. No attorney was contacted. The confession was held to be inadmissible.

In *Kelly v. State*, 621 S.W.2d 176 (Tex. Cr.App.1981), we held the defendant's waiver of his rights was knowing and intelligent when he confessed after his mother, in the presence of the defendant and police, tried to contact an attorney. This was held not to be an indication of the *defendant's* desire to consult with an attorney before talking to police.

The defendant in *Porier v. State*, 662 S.W.2d 602, 605 (Tex.Cr.App.1984), told the officer questioning him that he wished to speak to his attorney. After the defendant failed to reach his attorney by phone the officer resumed questioning and extracted a confession, which this Court held to be inadmissible.

*Castillo v. State*, 616 S.W.2d 620 (Tex. Cr.App.1981), offers perhaps the most similar set of facts to the instant case. Castillo was advised of his rights by a magistrate and informed the magistrate, in the presence of a police officer, that he wished

to have an attorney appointed to represent him. He was then "taken directly from the magistrate's office to the interrogation room, and interrogation began." *Id.* at 621. Within an hour he confessed. That confession was inadmissible because police had interrogated him in spite of his expressed desire for counsel.

■ It is clear, therefore, that when a defendant informs police or a magistrate of his desire to invoke his right to counsel, any subsequent "waiver" of that right will be invalid when such a waiver is prompted by further police questioning. To determine whether appellant invoked his right to an attorney, it is helpful to return to the source. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court stated, "If however, [the defendant] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning ..." In *Edwards,* supra, the Court emphasized that "it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 U.S. at 485, 101 S.Ct. at 1885, 68 L.Ed.2d at 387.

■ In the instant case, appellant invoked his right to an attorney, if at all, by telling his wife to get him a lawyer, an instruction only possibly overheard by one police officer. Even assuming arguendo, however, that Garrett did overhear appellant instructing his wife to get him a lawyer and a bail bondsman, we do not consider this a clear assertion of the right to consult with counsel before being questioned. In the cases cited above, the defendant made his request for a lawyer to police or to a magistrate in the presence of police. In the instant case, appellant had just been informed of his right to counsel by a police officer and again by a magistrate. In neither case did he in any way assert his right to a lawyer. When he was questioned by police officers two days later he was again specifically informed of his right to counsel and specifically waived that right. Each time appellant was given a clear opportunity to "clearly assert" his right to an attorney *to authorities,* he declined to do so. In view of these circumstances, we find appellant did not "clearly assert" his right to the assistance of counsel. *Edwards,* supra.[2]

*Edwards* further holds "that an accused, such as Edwards, having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel had been made available to him ..." 451 U.S. at 484, 101 S.Ct. at 1884. In this case counsel had been made available to appellant. That appellant's meeting with the attorney sent by his wife was unproductive was not due to intervention by police. One such brief encounter with an attorney does not, of course, waive the right to further assistance of counsel. *Green v. State,* 667 S.W.2d 528, 533 (Tex.Cr.App.1984). But police were entitled to inquire if appellant, having met with an attorney and dismissed him, was now willing to be questioned about the offense without an attorney present. After allowing another day to pass, police informed him yet again of his rights and asked if he wished to talk to them. Appellant stated positively that he would talk.

In short, in the circumstances before us we hold that appellant's waiver of his

2. Even if appellant's instruction had been directed at one of the officers present, it would have been at best an equivocal assertion of his right to consult with an attorney before being questioned. Appellant had just been informed that he would need the services of an attorney or a bail bondsman in order to be released from jail. He then said, "Get me a lawyer and a bail bondsman." A reasonable interpretation of this remark was that he wanted a lawyer only for the specific purpose of being released on bail. Police would therefore have been justified in asking appellant whether he wanted a lawyer to assist him before being questioned. "If a request by a defendant for counsel is equivocal, it is permissible for the questioning official to make further inquiry to clarify the suspect's wishes." *Silva v. Estelle,* 672 F.2d 457, 459 (CA5 1982). When police did make further inquiries of appellant, he told them he did not wish to consult a lawyer before being questioned.

rights was knowing and intelligent and his confession therefore admissible. The officials in this case scrupulously informed appellant of his rights on four separate occasions. Appellant indicated on each occasion that he understood those rights. Before questioning began appellant specifically waived them. This was the only time appellant expressed *to police* whether he wished to invoke or waive his rights. The hallway remark to his wife, only possibly overheard by one police officer, was insufficient to invoke appellant's right to consult with counsel before being questioned. At best the remark was an equivocal invocation, and when appellant was given every opportunity to specifically invoke his right, he refused to do so. Police were entitled to rely on that waiver.

The judgment of the court of appeals is affirmed.

TEAGUE, J., concurs in results.