Richard Eugene COLLINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 096–86.

Court of Criminal Appeals of Texas, En Banc.

April 1, 1987.

Charles F. Baird, court appointed, Houston, for appellant; Catherine Green Burnett, of counsel.

John B. Holmes, Jr., Dist. Atty. & Timothy G. Taft &᾽ Terry Wilson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

A jury convicted appellant of aggravated robbery. The jury found the enhancement allegations to be true and assessed punishment at confinement for ninety-nine years. See V.T.C.A. Penal Code, § 12.42(c). The Fourteenth Court of Appeals reversed the conviction, holding that appellant's inquiry, made after he was informed of his *Miranda* rights,[1] as to whether an attorney would be appointed when he went to Houston, constituted invocation of his right to counsel. *Collins v. State*, 701 S.W.2d 304 (Tex.App.—Houston [14th] 1985). The Court of Appeals held the confession which followed this alleged invocation should, therefore, have been suppressed.

We granted the State's petition for discretionary review to decide whether the Court of Appeals was correct in finding appellant's inquiry about appointment of counsel to constitute invocation of his right to counsel and to decide, as the Court of Appeals' seems to hold, whether all questioning of an accused must cease upon any reference to counsel, however ambiguous or equivocal.

On January 15, 1984, appellant was arrested in Garland as a suspect in a robbery that had occurred in Garland.[2] Police in

---

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The dissent seems to suggest we must accept the Court of Appeals rendition of the facts however incomplete, inaccurate or misleading our reading of the record reveals that rendition to be. This Court never has and never ought to rubberstamp such misapprehension of facts upon which an issue of law before us is based. Such a narrow and erroneous view calls for abdication by this Court of its duty, encourages inefficient procedures, and would perpetuate injustice and make a mockery of this Court's reviewing role.

Houston were notified that appellant had been arrested because he was a suspect in a robbery that had occurred in Houston. Lieutenant R.E. Phillips, a member of the Garland police department, spoke with appellant on January 16. He informed appellant of his rights [3] and spoke with him about the robberies, telling him that police from Houston were going to come to Garland to speak to him. Appellant did not request an attorney. Phillips showed appellant a flyer from Houston which had a picture and description of a robbery suspect who looked similar to appellant. Phillips testified that appellant was non-cooperative, did not say much, and just looked at the flyer.

The next day, January 17, two Houston detectives spoke with appellant concerning a robbery in Houston. They advised appellant of his rights [4] and photographed him. They spoke with him about the robberies for about 30 or 40 minutes. Appellant then agreed to give a written statement. Before he did so, he was taken before a magistrate and informed of his rights by the magistrate.[5] Phillips, who was present when the magistrate warned appellant, testified that appellant did not request an attorney at this point either. The Houston police then again informed appellant of his rights and appellant gave his written statement to police.

Although the record is not clear as to when it occurred, at some point while the Houston detectives were interviewing him, but before giving his written statement, appellant asked if he would get an appointed lawyer when he went to Houston. The record is not clear as to whether this question occurred before appellant was informed of his rights by the magistrate. Detective Kroschel and Detective Muir both indicated that appellant's inquiry concerned the future when he went to Houston about the Houston robbery, and whether he would get an attorney appointed in Houston. They testified that appellant's mention of an attorney was not made in reference to his statement and that they told him if he did not have a lawyer when he got to Houston, one would be appointed for him.

Appellant testified at the *Jackson v. Denno* [6] hearing on the voluntariness of the confession. Not surprisingly his rendition contradicts the State's witnesses. Appellant testified that he was interrogated "at least a dozen times" by Garland police, and that each time he told them that before he talked to them he wanted to talk to an attorney. Appellant also stated that he told the magistrate and the Houston police officers who questioned him that he wanted a lawyer before he talked.

The trial court is the sole judge of the credibility of the witnesses in a pretrial hearing and absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *Hawkins v. State*, 613 S.W.2d 720 (Tex.Cr.App.1981). The trial court evidently chose to disbelieve appellant's version of the circumstances surrounding the confession. We find nothing in the record to show an abuse of discretion and we likewise reject appellant's version. With this in mind we turn to the issue before us.

---

3. "You have the right to remain silent and not make any statement at all and that any statement you make may be used against you and probably will be used against you at your trial; Any statement you make may be used as evidence against you in court; You have the right to have a lawyer present to advise you prior to and during any questioning; If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning; You have the right to terminate this interview at any time."

4. See n. 2.

5. "I [Magistrate] warned said Defendant of the accusation against him and of the affidavit, if any, filed in support of such accusation; that he had the right to retain counsel; that he had the right to remain silent; that he had the right to have an attorney present during any interview with peace officers or attorneys representing the state and that he had the right to terminate the interview at any time; that he had the right to have an examining trial; that he was not required to make a statement and that any statement made by him may be used against him."

6. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

The admissibility of a confession depends on the result of "two distinct inquiries." *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 493, 83 L.Ed.2d 488, 493 (1984). First, the courts must determine whether the accused actually invoked his right to counsel. Then, the second inquiry of whether the accused validly waived that right can be examined. We are concerned with the first inquiry, the Court of Appeals' holding that appellant's inquiry about a lawyer constituted an invocation of his right to counsel. The Court of Appeals makes much of the fact that appellant's inquiry about counsel occurred after he was informed of his rights, stating,

> "When an accused asks about his right to counsel *prior* to receiving his *Miranda* warnings, and does not repeat his query following the warning, it is logical to assume that the warning answered his questions. However, when the question as to counsel is raised *after* the accused is informed of his rights, it is equally logical to assume that the accused did not fully understand his rights." (emphasis in original).

*Collins,* 701 S.W.2d at 306.

We agree with the State that this bright line rule making the point at which a person is warned determinative is not appropriate or correct. In *Miranda v. Arizona,* 384 U.S. 436, 444–445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) the Supreme Court stated, "If however, [the defendant] indicates *in any manner* and *at any stage* of the process that he wishes to consult with an attorney before speaking there can be no questioning...." (emphasis added). Surely, the warning and response to it are part of the circumstances to be examined and help show whether the accused "clearly asserted his right to counsel." *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). But, it is the totality of the circumstances surrounding the interrogation and alleged invocation which determine whether or not an accused has invoked his right to counsel. We reaffirm our past cases which hold that

the determination as to whether or not an accused has asserted his right to counsel must be made from *all* the facts and circumstances surrounding the alleged invocation, including the informing of rights and any discussion at any point about a lawyer. See *Massengale v. State,* 710 S.W.2d 594 (Tex.Cr.App.1986); *Porier v. State,* 662 S.W.2d 602 (Tex.Cr.App.1984); *Curtis v. State,* 640 S.W.2d 615 (Tex.Cr.App.1982); *Kelly v. State,* 621 S.W.2d 176 (Tex.Cr.App. 1981); *Ochoa v. State,* 573 S.W.2d 796 (Tex.Cr.App.1978). This Court does not now hold and has not so held in the past, that *any* reference to counsel constitutes invocation of the right to counsel,[7] whether that be after warnings are given after or before. Indeed, in *Massengale,* supra, and *Ochoa,* supra, we recognized the dictate of *Miranda,* supra, that a defendant can indicate "in any manner and at any stage" that he wishes to assert his right to counsel. However, we also recognize that just because that assertion can be done "in any manner" does not mean that mere reference to a lawyer is an "automatic" invocation. Certainly, no magic words must be stated. But, neither is the mention of "lawyer" a talisman for invocation. We always look to the facts and circumstances of the situation. See and cf. *Massengale,* supra; *Curtis,* supra; *Kelly,* supra; *Connecticut v. Barrett,* — U.S. ——, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987).

In the instant case appellant was arrested on January 15 in Garland for a robbery committed in Garland. On January 16, he was informed of his rights and questioned. He was able to speak to his wife on the phone. At no point did he mention wanting to speak with a lawyer either before or after being informed of his rights to do so. Then, on January 17, when the Houston police questioned him about a different robbery committed in Houston he was warned again. Although not clear from the record, at some point during the 30 to 40 minutes in which the detectives talked to him after warning him, appellant inquired of the detectives if he would have

---

7. The footnote in *Smith v. Illinois,* 469 U.S. 91, n. 3, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) citing

*Ochoa v. State,* supra, for such proposition is incorrect and ignores case law in this state.

a lawyer appointed for him when he went to Houston. The detectives told him that if he did not have an attorney when he was brought to Houston he would get one there. No further discussion as to an attorney occurred. The detectives testified that appellant's inquiry was directed to getting a lawyer "down the road" when he got to Houston. Appellant was then brought before a magistrate and informed of his rights. He did not request a lawyer. He was read the rights included on the statement form, initialed each one to indicate that he understood them, and then gave a written statement to the detectives.

The recent Supreme Court case of *Connecticut v. Barrett,* supra, is instructive for the instant case. In *Connecticut v. Barrett* the defendant was advised of his rights and stated that " 'he would not give the police any written statements unless his attorney was present but had no problem in talking about the incident.' " *Connecticut v. Barrett,* —— U.S. at ——, 107 S.Ct. at 830. About thirty minutes later Barrett was again warned and repeated his assertion that he was willing to talk but would not give a written statement until his attorney was present. Barrett then gave an oral statement admitting his involvement in the offense.

The Connecticut Supreme Court reversed Barrett's conviction, holding that he had invoked his right to counsel by refusing to make written statements without the presence of an attorney. The Connecticut Court held that such invocation constituted an invocation of counsel for all purposes.

The United States Supreme Court reversed the judgment of the Connecticut court, holding that, "To conclude that respondent invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of respondent's statement." This same reasoning applies to the instant case where appellant's statement referring to a lawyer was an inquiry into whether or not he would get an appointed attorney when he went to Houston for his robbery case there. His statement was not directed to an invocation

of his right to have a lawyer for the purpose of questioning.

*Connecticut v. Barrett* does not draw a line at the warnings given. Rather, the circumstances showing the defendant's intentions, including the warnings of course, are determinative. A defendant's limited invocation was upheld to the extent it was invoked and not for all purposes.

The instant case is also similar to *Curtis,* supra, where the defendant's inquiry to an officer concerned how he would be provided a court appointed attorney. In that case we held that the inquiry was not "tantamount to invocation of the right to have counsel present during custodial interrogation. Compare *Edwards v. Arizona,* 451 U.S. 477, 480 n. 6, 101 S.Ct. 1880, 1882 n. 6, 68 L.Ed.2d 378 (1981)." In the instant case, appellant's inquiry was directed at whether or not when he left Garland, where he faced robbery charges, he would get a lawyer in Houston for that separate robbery charge. The officers clarified that he would get a lawyer in Houston if he did not then have one when he was brought to Houston. Further, appellant was warned by a magistrate, apparently after this inquiry, and never mentioned anything about desiring a lawyer for any purpose, let alone for the questioning and statement. Appellant was given numerous opportunities to assert his right to an attorney when questioned in reference to the robbery in Garland as well as when questioned in reference to the robbery in Houston. He did not do so. His inquiry about an appointed attorney was directed to a different consideration—would he get an attorney in Houston when and if he had to go there to face the charges against him. Cf. *Connecticut v. Barrett,* supra; cf. *Jordan v. Watkins,* 681 F.2d 1067 (5th Cir.1982).

*Ochoa,* supra, does not control the instant case because the defendant in *Ochoa,* supra, invoked his right to counsel before further questioning and the giving of a statement: He stated that he " 'probably ought to talk to a lawyer or something to this effect or didn't want to sign anything until he talked to a lawyer ...' " The officer then made idle conversation for

awhile and resumed questioning. Contrast the instant case in which appellant's inquiry was directed to the future, "down the road" as his own attorney characterized it,[8] and was not an indication that he wanted an attorney for the questioning or before going on. The inquiry was not even an equivocal invocation of counsel. It was simply a question directed by a defendant facing charges in separate cities, as to the possibility of getting an appointed lawyer in the other city when he went there to face the charges. *Ochoa*, supra, and *Porier*, supra, are inapplicable. The facts are not similar. *Curtis*, supra, is an analogous case. Given the facts and circumstances of the instant case, we do not believe that appellant's inquiry constituted an invocation of the right to counsel.

Because we hold that appellant did not invoke his right to have counsel present during questioning we need not address the issue of whether an ambiguous or equivocal invocation is sufficient to require police to cease questioning an accused.

The judgment of the Court of Appeals is reversed. This case is remanded to the Court of Appeals for consideration of appellant's remaining grounds of error.

TEAGUE, J., dissents because he finds that the opinion authored by Justice DRAUGHN of the 14th Court of Appeals more than adequately and properly stated all that needs to be stated in the appeal of the cause; therefore, the State's Petition for Discretionary Review should be refused as having been improvidently granted.

CLINTON, Judge, dissenting.

The Houston (14th) Court of Appeals found certain facts and circumstances attended officers' taking a confession from appellant, *viz*:

"Detective Kroschel testified at trial that *after* appellant was given his *Miranda* warning *but prior* to making a statement, appellant inquired *whether* or *when* an attorney would be appointed. Appellant was not provided with counsel, nor did the interrogation cease. Instead, appellant was told by Detective Kroschel that he would have counsel when he went to court. Detective Muir testified that he remembered appellant asking if he could get an attorney when he came to Houston and that he told appellant he would be appointed counsel when he got to court."

*Collins v. State*, 701 S.W.2d 304, 305 (Tex. App.–Houston [14th] 1985).[1] On that factual premise the Houston Court concluded that "appellant's question as to 'whether' or 'when' an attorney could be appointed to represent him, asked *after* he was given his rights, was sufficient to invoke his right to counsel." *Id.*, at 306. (Emphasis in original opinion).

Now the majority would have it factually that "appellant asked if he would get an appointed attorney *when he went to Houston*," Maj. opinion, p. 567, and as a matter of law that the court of appeals held "appellant's inquiry, made after he was informed of his *Miranda* rights, as to whether an attorney would be appointed *when he went to Houston*, constituted invocation of his rights to counsel." *Id.*, at p. 566.[2]

---

8. Although not necessarily determinative, we note that in his argument to the trial judge during the hearing on the motion to suppress the confession, defense counsel did not once argue that appellant had invoked his right to counsel. Rather, his argument went to the legality of the arrest and to alleged "psychological coercion" involved in obtaining the confession.

1. Emphasis added by court of appeals; all other emphasis is mine throughout unless otherwise indicated.

2. The majority gets its "Houston notion" from testimony of Detective Muir, the State's last witness at the *Jackson v. Denno* hearing; asked on crossexamination whether he was saying "there was never any mention of a lawyer other than when [appellant was warned] that he had a right to a lawyer," Muir responded:

"Yes, sir. He asked if he would get a lawyer when he come to Houston, *if I remember right.* And we told him that one would be appointed when he got here if he didn't have one."

Muir added, "but I *think* that was at the end of it he was talking about coming to Houston, would he have an attorney."

Thus the majority is deciding on a factual basis other than that found and premised below whether the Houston Court came to a correct conclusion of law. I dissent to that kind of "review" of a decision of a court of appeals.[3]

In the instant cause we did not grant review to decide if the court of appeals correctly concluded that an inquiry "as to whether an attorney would be appointed when [appellant] went to Houston constituted invocation of his right to counsel," for the rather obvious reason that the court of appeals did not hold that. Rather, recognizing the several allusions to an appointed attorney by both appellant and detectives might have created a ambiguous situation, and because the court of appeals assumed he "did not fully understand his rights," *Collins v. State*, supra, at 306, we granted review to determine whether the officers were obliged to ensure that appellant did understand his rights. Compare *Massengale v. State*, 710 S.W.2d 594, 598, n. 2 (Tex.Cr.App.1986).

At the *Jackson v. Denno* hearing on direct examination by the prosecution Detective Kroschel testified that upon meeting with appellant in an interview room, "We took some [eight] pictures of him, advised him of his rights and talked to him."[4] He answered negatively to a question whether at any time after being warned appellant "request[ed] to exercise any of his constitutional rights, specifically including the right to confer with counsel." The next questions and his answers are:

"Q. Did he ever mention an attorney?

A. Yes, sir.

Q. What did he say about a lawyer?

A. He asked if he would have one appointed to him and I said yes, when you went to Court.

Q. ... Did he ask to have one at that time?

A. No, sir.

Q. Did he ask to have one before he talked to you?

A. No, sir."

When appellant indicated that he would talk to the detectives, they first interviewed him about "where he had been, what he had been doing, his full identification, name, address, date of birth and things like that, [and] then all the way down the line and then he asked, what kind of deal are your going to cut and we said none;" appellant said "okay, and then he went ahead and talked." The detectives sought out Lt. Phillips, told him appellant wanted to give a statement, and asked for a typewriter. Lt. Phillips said he would provide one but wanted "to get our Judge to arraign him so there's no problems and advise him of his rights so he understands what he's doing." After that was done, Lt. Phillips remained in the interview room while a statement was taken from appellant. In that statement appellants confesses to committing not only the instant armed robbery but also to four more in Houston and one each in Hurst and Carrollton.

On crossexamination Detective Kroschel retold of appellant's mentioning an attorney, *viz:*

"Q. All right. Now, you've indicated that he talked to you about wanting a lawyer. Is that correct?

A. He asked if, when one would be appointed to him.

---

**3.** Constitutionally, courts of appeals determine "all questions of fact brought before them on appeal or error," Article V, § 6. Even while a majority of this Court resolutely disapproves their applying the traditional insufficient evidence standard, and will not regard as "conclusive" their determinations on factual matters, see, e.g., *Hill v. State*, 719 S.W.2d 199 (Tex.Cr. App.1986), the Court should at least give some deference to their factual findings, unless it can demonstrate they are inaccurate. In the latter event we have summarily vacated the judgment and remanded for reconsideration in light of the true factual scenario. See, e.g., *Szilvasy v. State*, 678 S.W.2d 77 (Tex.Cr.App.1984).

**4.** Several of the photographs portray appellant stripped to the waist. Lt. Phillips explained:

"I was asked to come in, which is something unusual—I'm not, we've never had that problem, but Houston came in and asked if .... they could take pictures of him with his top down and I said, why is that, and they said, to prove that he's not been physically abused."

Q. And what was your response to that?

A. I said I'm sure they do. They always appoint one.

Q. But he didn't indicate to you that he wanted to talk to him before he made the statement?

A. No, sir. He did not.

Q. He's worried about making a statement and then wanting a lawyer later on down the road. Is that what you are saying.

A. It's what he told us. It's what he asked."

At trial appellant again broached the subject with Detective Kroschel, by asking him "in relation to .... the blue card Miranda warning [and] that contained on the top of the statement, was there ever any discussion with the defendant about his request to be given the opportunity to at least talk to an attorney at some point in time?" Now the witness somewhat modified his version, *viz:*

"A. The only thing he asked us, if he would have an attorney appointed to him.

Q. And what did you say in relation to that?

A. Yes, he would.

Q. Did you indicate that it could be done at that particular time or was this just a nebulous question and a nebulous response about whether that might be forthcoming as far as an attorney is concerned?

A. That's all that was asked.

Q. He just asked if he could have one and you said, you bet, and it was dropped. Is that correct?

A. Yes, sir.

Q. All right, sir. Was that before or after he made the statement?

A. Before.

Q. So he did at some point prior to making this statement at least mention wanting an attorney. Is that correct?

A. Yes, sir."

On redirect the prosecutor pursued the matter:

"Q. Did he ask for an attorney at that time, sir, or was the question in terms of would he have one in the future?

A. He did not ask for one at that time.

Q. Did you offer him one at that time when you read him his rights?

A. Yes, sir."

At the conclusion of the hearing the trial judge pronounced the finding of the court "that the statement made by the defendant was freely and voluntarily made." The judge did not make a finding on the matter of invocation of right to counsel. There are no written findings of fact and conclusions of law. Compare *Curtis v. State*, 640 S.W.2d 615, 618 (Tex.Cr.App.1982).[5]

The rationale of the Houston (14th) Court of Appeals is that "when the question as to counsel is raised *after* the accused is informed of his rights, it is equally logical to assume that the accused did not fully understand his rights." *Collins*, supra, at 306. (Emphasis in original). The State asserts that the Houston Court has formulated a "bright line rule," but, as the appellant characterizes it in his brief, that assertion is a "red herring." Unfortunately the majority gets distracted by its smell from the real issue decided by the Houston Court: When an accused is about to be subjected to custodial interrogation, and after being warned under *Miranda* it appears from his questions that he does not fully understand his rights to counsel, the interrogator must clarify for him those rights to render a subsequent statement admissible. Manifestly the Houston Court was agreeing with a similar decision in *Huff v. State*, 678 S.W.2d 236, 242 (Tex. App.—Corpus Christi 1984), no PDR; see also *Goodnough v. State*, 627 S.W.2d 841, 844 (Tex.App.—San Antonio 1982), PDR refused.

5. In pattern form the court instructed the jury on the issue of voluntariness, warnings and waiver of rights by appellant.

Again, we granted review in this cause to examine that theory, yet we do not. Accordingly, I respectfully dissent.

ONION, P.J., and WHITE, J., join.