

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00204-CR

JAMES R. BIEGLER JR.                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

## FROM THE 271ST DISTRICT COURT OF WISE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant James R. Biegler Jr. appeals his conviction for burglary of a habitation. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

# I. FACTUAL BACKGROUND

Shelly Laaser returned from work with her children about 6:45 p.m. on Wednesday, April 7, 2010, and discovered that her home in rural Wise County had been broken into and ransacked. Shelly called her husband, Jared Laaser, who told her to call 911. Jared immediately returned home. When Wise County Deputy Sheriff Travis Waddell arrived, he noted that the home "was in total disarray." Waddell found drawers pulled out, closets opened, and what had not been taken had been thrown on the floor, including food from the refrigerator. Many valuable items had been taken: guns, video-game systems, televisions, jewelry, a dirt bike, motorcycles, tools, compressors, a deep freezer, a clothes washer, and a clothes dryer. Notably, among the items missing was the small portion of an L-shaped desk, a deep freezer full of meat and frozen foods, a trailer, and Jared's dopp kit. It was later determined that the total value of the missing property was approximately $49,000.

Several days later, Jared received a telephone call from Travis Crawford, a Garvin County, Oklahoma, Sheriff's Office Captain. Crawford had arrested Appellant and Curtis Green on an unrelated offense and, in the inventory search of Appellant's car, had found a shaving kit containing Jared's business card, Jared's prescription medication, and a Sony camera. A trailer was attached to Appellant's car. Wise County Sheriff Investigator Mike Naegle, who had been assigned the case to investigate the Laasers' burglary, contacted Crawford.

Naegle drove to Oklahoma and questioned Appellant after giving him the required warnings. Appellant denied having anything to do with the Laasers' burglary but revealed his address in River Oaks, Texas. Naegle then drove three hours to Appellant's house and saw two trailers parked in front. Naegle drove a short distance away to wait for local police officers to arrive. When Naegle and the local police officers returned, both trailers had vanished. After receiving written permission to search from Appellant's wife, April, Naegle found property that had been stolen from the Laasers, including a small desk and packages of meat in a freezer with "JUNELAASE" stamped in red on them. When Naegle asked April about the trailers, April called someone to return the trailers. Apparently, Appellant had called April after Naegle's first interview with Appellant and had told her to "get rid of the stuff." The trailers were returned, and Naegle found additional property taken from the Laasers in the trailers. The Laasers' freezer was later recovered from April's neighbor's house.

Naegle then went to Green's home, where Green's live-in girlfriend, Morgan Marriott, gave Naegle consent to search the home. Naegle found more of the Laasers' property in Green's home, including two of the Laasers' guns. Naegle returned to Oklahoma to interview Appellant a second time in an effort to recover more of the Laasers' property. After Naegle again gave Appellant the required warnings, Appellant told Naegle that he had put some of the Laasers' guns at his mother's house; however, the guns were not found. Appellant also admitted that he had taken the meat from the Laasers' freezer and that he had

not taken the larger portion of the L-shaped desk, which matched the smaller portion stolen from the Laasers' home.

Appellant was indicted for burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02 (West 2011). A jury found Appellant guilty. Appellant elected to try the issue of punishment to the trial court. During punishment, Appellant testified and confessed to his role in the Laaser burglary. The trial court sentenced Appellant to eleven years' confinement. Appellant now appeals his conviction and argues that (1) he did not waive any error occurring at the guilt-innocence phase of the trial by admitting his guilt at the punishment phase, (2) the trial court erred by admitting the video of Naegle's second interview of Appellant, (3) the evidence was legally insufficient to support his conviction, and (4) the trial court's charge on "unexplained possession of stolen property" was an impermissible comment on the weight of the evidence.

## II. DISCUSSION

### A. WAIVER

Appellant argues that he did not waive error by admitting his guilt during punishment. The State concedes that Appellant's admission at punishment does not waive any error occurring at guilt-innocence. Therefore, we sustain point one and do not consider Appellant's arguments directed to the guilt-innocence portion of the trial to be waived. *See Jacobson v. State*, 398 S.W.3d 195, 203–04 (Tex. Crim. App. 2013).

4

## B. ADMISSION OF CUSTODIAL STATEMENT

Appellant contends that the trial court erred in admitting the video of Naegle's second interview because his right to counsel was violated during the interrogation. As previously set out, Naegle interviewed Appellant twice. During the second interview, the following exchange occurred after Naegle again read Appellant the *Miranda* warnings:

> Appellant: Is there any way I can talk to a lawyer or—
>
> Naegle: Oh yeah. If you want to talk to your lawyer, that's fine. That's up to you. Is that what you want to do?
>
> Appellant: I don't have one.
>
> Naegle: Now, let me ask you, because you mentioned that I want to make sure that I understand. You don't want to talk to me anymore? You want a lawyer?
>
> Appellant: I do want to talk to you but I don't know what—I don't want to sit here and hang myself neither.
>
> Naegle: When you talk about a lawyer—
>
> Appellant: What kind of charges are you talking about on me? I mean what are you talking about?
>
> Naegle: Let me tell you, okay, before we go any further I need to—cause you mentioned "lawyer," I want to know whether you want to terminate this interview without an attorney or whether you want—I want it plainly. I don't want none of this "maybe here, maybe there," because whenever this is down the road, I don't want any attorney coming in and saying, "Well, he asked for an attorney." I want it plain right out now whether you want to talk to me anymore without an attorney. [Brief pause.] All I'm trying to do is get my stuff back.
>
> Appellant: Yes sir. I don't want to get, you know, I don't

5

want my wife to get in trouble for nothing she hadn't done. She didn't do nothing.

Naegle: She helped get rid of some of the stuff.

Appellant: Get rid of what? She didn't know there was stuff to—

Naegle: Do you want to talk to me anymore or not?

Appellant: Yes sir. I do. I'm talking to you.

Naegle: I mean without an attorney present to make it clear.

Appellant: Yes, sir. Yes, sir.

Naegle: Okay.

Approximately ten minutes later when Naegle began asking Appellant to provide specifics about the stolen property, Appellant clearly stated he wanted to "terminate" the interview, which Naegle immediately did.

Appellant now argues, as he did at trial, that the statement was inadmissible because Naegle continued to question Appellant after Appellant clearly and unambiguously invoked his right to counsel. He further asserts that Naegle "baited" Appellant into waiving his right to counsel by implying his wife would be imprisoned for her role in the burglary.

We review a trial court's admission of a custodial statement under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical

6

fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

An accused's statement resulting from custodial interrogation is inadmissible unless the accused was advised of his *Miranda* rights, including his right to consult with an attorney, and voluntarily waived those rights. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2007); *Miranda v. Arizona*, 384 U.S. 436, 467–68, 86 S. Ct. 1602, 1624–25 (1966). Interrogation immediately must stop if an accused indicates that he wants an attorney. *Miranda*, 384 U.S. at 474, 86 S. Ct. at 1628. But the request for counsel must be clear and unambiguous. *Davis v. United States*, 512 U.S. 452, 458–59, 114 S. Ct. 2350, 2354–55 (1987); *Russell v. State*, 727 S.W.2d 573, 575 (Tex. Crim. App.), *cert denied*, 484 U.S. 856 (1987). The mere utterance of the word "lawyer" is not sufficient to invoke the right to counsel. *Lucas v. State*, 791 S.W.2d 35, 45 (Tex. Crim. App. 1989); *Russell*, 727 S.W.2d at 575. Whether the right to counsel has been invoked is a fact-intensive inquiry that requires an objective analysis of all the surrounding facts and circumstances. *Davis*, 512 U.S. at 458–59, 114 S. Ct. at 2355; *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000); *Collins v. State*, 727 S.W.2d 565, 568 (Tex. Crim. App.), *cert. denied*, 484 U.S. 924 (1987).

We conclude that Appellant did not clearly and unequivocally invoke his

7

right to counsel. In Naegle's first interview with Appellant, after Naegle read him the required *Miranda* warnings, Appellant did not mention that he wanted an attorney and agreed to give his statement in which he denied any involvement in the burglary. In the second interview, Naegle explicitly told Appellant that he was seeking more information on the location of the still-missing property and told him what they had already discovered. After Naegle again read Appellant the *Miranda* warnings, Appellant considered stopping the interview and consulting an attorney, but he did not clearly and directly do so. In fact, after Naegle told Appellant he needed to invoke his right to counsel clearly—"I want it plain right out now whether you want to talk to me anymore without an attorney"—Appellant reaffirmed that he wanted to talk to Naegle. Indeed, Appellant later clearly told Naegle he wanted to "terminate" the interview, which Naegle did. The totality of the circumstances objectively shows that Appellant asked an ambiguous and equivocal question concerning his right to counsel. Naegle correctly stopped his questioning to clarify Appellant's mention of an attorney and then continued the interview after Appellant clearly decided to continue the interview without an attorney. The trial court did not err by admitting the video of the second interview. *See, e.g.*, *Davis*, 512 U.S. at 459–62, 114 S. Ct. at 2355–57; *Davis v. State*, 313 S.W.3d 317, 339–41 (Tex. Crim. App. 2010), *cert. denied*, 132 S. Ct. 122 (2011); *Gutierrez v. State*, 150 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We overrule Appellant's second issue.

8

## C. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence is insufficient to support his conviction because there was no evidence that he had actual physical possession of the property and because third parties had an equal right of access to the trailers and homes where the stolen property was found. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 2006); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We must presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi*, 330 S.W.3d at 638; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* at 246.

To sustain a conviction for burglary of a habitation, the evidence must demonstrate that an individual entered a habitation, without the effective consent of the owner, in order to commit a felony, theft, or assault. Tex. Penal Code Ann. § 30.02(a)(3) (West 2011). An individual may be charged as a party to a burglary when he acts in concert with another who actually commits the offense. Tex. Penal Code Ann. §§ 7.01–.02 (West 2011). Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. *See Beardsley v. State*, 738 S.W.2d 681, 684–85 (Tex. Crim. App. 1987).

Appellant admitted personal possession of the stolen property and his involvement in the burglary when he told Deputy Naegle during the second interview that he took the meat from the freezer and that he left the larger portion of the desk at the Laasers' house. Further, some of the stolen property was found in his car at the time of his arrest one week after the burglary. Appellant offered no explanation for his possession of the property at the time of his arrest and there was no evidence in the record that others

had control of his car. He further demonstrated control over some of the property when he called his wife after Naegle's first interview and told her to move the trailers. The strongest evidence that Appellant at least participated in the burglary was April's testimony that when she came home on the day of the burglary, a freezer and the smaller portion of an L-shaped desk were blocking the front door. This evidence would allow a rational fact-finder to infer that Appellant had recent possession or control of the Laasers' property and committed the burglary as a party or as a conspirator. *See, e.g.*, *Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 50–52 (Tex. Crim. App. 2004); *Naranjo v. State*, 217 S.W.3d 560, 571–72 (Tex. App.—San Antonio 2006, no pet.). The evidence was sufficient, and we overrule Appellant's third issue.

## D. JURY CHARGE

In his final point, Appellant argues, as he did at trial, that the trial court impermissibly commented on the weight of the evidence by submitting the State's requested charge on Appellant's unexplained possession of recently stolen property:

> If you find from the evidence that the Defendant was in recent unexplained possession of stolen property belonging to Jared Laaser, then you may infer the Defendant's guilt from such inference, if any, but you are not required to do so. The inference or deduction from said finding is not a presumption but is an inference of fact that you may draw from the evidence, if any.

11

We agree that this portion of the charge was an impermissible comment on the weight of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007); *Brown v. State*, 122 S.W.3d 794, 799–803 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 938 (2004); *Hankins v. State*, 646 S.W.2d 191, 197 (Tex. Crim. App. 1983) (op. on reh'g); *Stewart v. State*, 77 S.W. 791, 791 (Tex. Crim. App. 1903); *Blakeley v. State*, 692 S.W.2d 206, 209 (Tex. App.—Fort Worth 1985, pet. ref'd); *Roberts v. State*, 672 S.W.2d 570, 578–80 (Tex. App.—Fort Worth 1984, no pet.). In *Roberts*, we specifically held that an instruction concerning an "inference or presumption of guilt" arising from a defendant's unexplained possession of stolen property was error. 672 S.W.2d at 580; *cf. Brown*, 122 S.W.3d at 801–02 (in murder prosecution, holding instruction allowing jury to infer intent from acts done and words spoken constituted improper judicial comment).

This type of preserved jury-charge error—a nonstatutory presumption that is a mere judicial-review device for assessing the sufficiency of the evidence—is not constitutional and, thus, must be reviewed for harm under article 36.19. Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Brown*, 122 S.W.3d 794, 802–03. As such, we may not reverse the trial court's judgment unless the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be some harm to the accused from the error. *Id.*; *see also Louis v. State*, 393 S.W.3d 246, 254 (Tex. Crim. App. 2012). In making this determination, "the actual degree of harm must be assayed in light of the entire

12

jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also Barron v. State*, 353 S.W.3d 879, 884 (Tex. Crim. App. 2011) (elaborating on importance of considering entire jury charge). Importantly, the court of criminal appeals has classified the type of jury-charge error Appellant complains of to be "[s]omewhere in the middle of the 'improper-judicial-comment' scale." *Brown*, 122 S.W.3d at 799.

Here, the charge was six pages in length, described the elements required to convict Appellant, and included a myriad of definitions. The placement of the erroneous presumption instruction was not such that the jury's attention would be unnecessarily drawn to it. The jury was instructed in three separate paragraphs that Appellant must be acquitted if the jury had a reasonable doubt as to Appellant's guilt. The jurors were further instructed that if they concluded that April was an accomplice to the burglary, her uncorroborated testimony was not sufficient to convict Appellant. The application paragraph correctly set out the elements of burglary that the jury had to find beyond a reasonable doubt to convict Appellant.

Appellant's counsel asserted during closing argument that there was no evidence, other than stolen property being found where Appellant was unaware of it, that Appellant participated in the burglary. In its rebuttal closing argument,

13

the State mentioned the improper presumption instruction but stressed that the evidence showed Appellant was involved and that Appellant admitted to Naegle that he took the small portion of the desk and the meat.

As discussed regarding Appellant's third issue, the evidence admitted at trial showed that several items stolen from the Laasers were found at Appellant's home and in Appellant's car shortly after the burglary. During Naegle's second interview, Appellant admitted taking some of the property. Appellant demonstrated he had control over the property when he called April and told her to "get rid of the stuff," which she did.

The record of the trial as a whole, specifically the evidence that Appellant had admitted personal possession and control over the stolen property, shows that Appellant was not harmed by the error in the jury charge. *See Ward v. State*, 72 S.W.3d 413, 418 (Tex. App.—Fort Worth 2002, no pet.) (holding impermissible comment on the weight of the evidence in jury charge harmless based on "ample evidence" to convict defendant of charged offense)*; cf. Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000) (holding failure to instruct jury on accomplice-witness rule harmless error where sufficient evidence to convict defendant as principal). We overrule Appellant's fourth issue.

## III.  CONCLUSION

We sustain Appellant's first issue and consider his arguments directed to alleged errors at the guilt-innocence phase of his trial even though he admitted guilt at punishment.   However, we overrule Appellant's remaining issues and affirm the trial court's judgment.


CHARLES R. HOLCOMB
JUDGE

PANEL:   DAUPHINOT and GARDNER, JJ.; and CHARLES R. HOLCOMB (Senior Judge, Retired, Sitting By Assignment)

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  September 19, 2013